UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| RONALD ANTONIO ROSEBUD,<br><br>Plaintiff,<br><br>V.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | ) | Civil No. 13-153-GFVT<br><br>**MEMORANDUM OPINION & ORDER** |

*** *** *** ***

Plaintiff Ronald Antonio Rosebud brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his application for supplemental security income (SSI). The parties have filed cross motions for summary judgment. [R. 43, 46]. The Court, having reviewed the record and for the reasons set forth herein, will **REVERSE** and **REMAND** the Commissioner's decision for further proceedings consistent with this opinion.

I

Rosebud protectively filed an application for SSI on July 5, 2011. [Transcript (Tr.) 62-77]. He alleges a disability beginning on that filing date[1] due to HIV, bipolar disorder, and schizophrenia. [Pl.'s Mot. Summ. J., R. 12-2 at 3]. Rosebud's application was denied initially [Tr. 76] and upon reconsideration [Tr. 93]. Subsequently, at Rosebud's request, an

---

[1] Rosebud's initial application provided for an onset date of December 1, 1993, [Tr. 62], but the ALJ granted Rosebud's oral motion at the hearing to amend the onset date to the filing date. [Tr. 61].

administrative hearing was conducted before Administrative Law Judge (ALJ) Don Paris on August 21, 2012. [Tr. 27-61]. During the hearing, ALJ Paris heard testimony from Rosebud and vocational expert (VE) Chris Ryman. [Tr. 27-55, 55-61]. Rosebud, who was 38 years old at the time of the hearing, has a seventh-grade education and claimed he had no past relevant work experience. [Tr. 34-36]. The VE testified that there are jobs that exist in significant numbers in the national economy that Rosebud could perform; the ALJ accepted that testimony. [Tr. 55-61].

Two additional facts are significant to this appeal. Rosebud was apparently awarded benefits in 1994 in an initial determination. [Pl.'s Mot. Summ. J., R. 43-1 at 3; Def.'s Mot. Summ. J., R. 46 at 3; *see* Tr. 160, 244-46]. Also, according to the parties' briefs and his own testimony from the hearing, Rosebud was subsequently incarcerated for "two and a half years" sometime around 2011. [Tr. 20; *see* Tr. 323-70].

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step One, ALJ Paris found that Rosebud has not engaged in substantial gainful activity since July 5, 2011, the alleged onset date. [Tr. 15]. At Step Two, the ALJ found that Rosebud's borderline intellectual functioning, affective disorder, personality disorder, substance addiction disorder, HIV infection, and seizure disorder constituted severe impairments. [*Id.*] At Step Three, the ALJ found that Rosebud's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 15-16].

At Step Four, the ALJ assigned Rosebud a residual functional capacity (RFC) with certain modifications, stating:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b). The claimant can occasionally lift or carry 20 pounds, and frequently lift or carry 10 pounds. He can stand, walk, or sit for six hours each (with normal breaks) in an eight-hour workday. Due to his diagnosis of seizure disorder, he should never climb ladders, ropes, or scaffolds, and should avoid all workplace hazards such as unprotected heights or dangerous machinery. He can frequently climb ramps or stairs, stoop, kneel, crouch, or crawl. The claimant experiences mental impairments, but he can understand, remember, and carry out simple work instructions. He would do best with oral instruction and demonstration. He has sufficient attention and concentration for two-hour segments in an eight-hour workday. He would work best in an object-focused work environment where contact with co-workers and supervisors would be casual and infrequent, with only infrequent exposure to the general public. He would be able to adapt to changes in a non- complex work setting with no more than low to medium stress levels, and in work that is not fast paced or quota driven.

[Tr. 16]. Although Rosebud has no past relevant work history, [Tr. 21], at Step Five, ALJ Paris relied on the testimony of the VE to find that there are jobs that exist in significant numbers in the national economy that Rosebud could perform. [Tr. 21-22]. Accordingly, on August 28, 2012, the ALJ issued an unfavorable decision, finding that Rosebud was not disabled and was therefore ineligible for SSI. [Tr. 23]. The Appeals Council declined to review the ALJ's decision on March 29, 2013, [Tr. 1-3], and Rosebud now seeks judicial review in this Court.

II

A

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (internal quotation marks and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the

reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

B

Rosebud argues that his benefits "should have been . . . re-started upon his release [from custody], under *Drummond v. Commissioner*, . . . and the doctrine of administrative res judicata." [Pl.'s Mot. Summ. J., R. 43-1 at 1]. This argument conflates two distinct issues: whether Rosebud was entitled to automatic resumption of benefits upon his release, and whether the ALJ was required to give res judicata effect to a prior award of benefits made at the initial determination stage. More importantly, however, both of these arguments turn on essential facts that are largely absent from the record.

Rosebud's entitlement to resumption of benefits turns on whether they were terminated during his period of incarceration. Upon incarceration, an individual's SSI benefits are suspended. 20 C.F.R. § 416.211. After twelve consecutive months of benefit suspension, a recipient's benefits are terminated, "effective with the start of the 13th month after the suspension began." 20 C.F.R. § 416.1335. The record, however, is quite flimsy regarding Rosebud's incarceration, the precise dates during which he was in custody, or, for that matter, whether Rosebud has been incarcerated multiple times. ALJ Paris mentions it only once in his decision, remarking that he considered medical records associated with Rosebud's incarceration. [Tr. 20]. The dates of incarceration cannot be inferred from the correctional facility's medical records. They generally span the period between March 25, 2011 and June 25, 2011 – a timeframe too short to demonstrate the requisite twelve consecutive months for termination. [Tr.

323-70]. Not only that, but some of the correctional facility's medical records date back to 2006, [Tr. 351-56], suggesting that Rosebud has been incarcerated for multiple periods. The most definitive reference to the length of Rosebud's incarceration comes from Rosebud himself, who testified during the hearing that he was incarcerated for "two and a half years," which he confirmed was "the longest time" he had been in custody. [Tr. 45-46]. The ALJ inquired into Rosebud's work responsibilities and the medications he was prescribed while in custody, but did not ask further questions to confirm the length of that incarceration. [Tr. 46].[3]

While this might have been harmless error in light of Rosebud's testimony,[4] the ALJ's failure to inquire into Rosebud's prior award of benefits and to address the res judicata effect of that award is reversible error. The Commissioner contends that *Drummond* only requires an ALJ to give res judicata effect to a prior determination made by an ALJ or the appeals council. Because Rosebud's 1994 benefits award was (apparently) made at the initial determination level, the Commissioner reasons, that decision is not binding on a subsequent ALJ. But contrary to the Commissioner's restrictive reading, *Drummond* expressly contemplates that the principles of res

---

[3] The Commissioner cannot cure this deficiency by proffering Rosebud's booking documents along with its Motion for Summary Judgment, [R. 46-2], for the first time to this Court. *E.g., Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]his court has repeatedly held that evidence submitted . . . after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."); *Cline v. Comm'r*, 96 F.3d 146, 148 (6th Cir. 1996) ("[T]he district court cannot consider [] new evidence [submitted after the ALJ's decision in deciding whether to uphold, modify, or reverse the ALJ's decision.").

[4] Courts have ordered remand where the ALJ failed to examine a claimant about the dates of his incarcerations or his benefit suspensions or terminations, or failed to inquire into a prior award of benefits. *Bonner v. Astrue*, 725 F. Supp. 2d 898 (C.D. Cal. May 19, 2010) (remanding because the ALJ failed to request any information regarding "the consecutive length of the plaintiff's incarceration(s), whether plaintiff's previously awarded SSI benefits were suspended or terminated, and when," which affected the determination of whether those benefits should have been resumed after release); *Bragg v. Comm'r*, 2011 WL 1374067 (E.D. Mich. 2011) (unreported) (remanding since ALJ failed to inquire into and address the effect of Plaintiff's prior award of benefits and her subsequent termination due to incarceration on her re-application for benefits); *Smith v. Astrue*, 2012 WL 5268712 (S.D. Ohio Oct. 23, 2012) (unreported) (remanding in light of factual ambiguities regarding a prior award and termination because of incarceration). The ALJ's same failures in this case constitute error, but, in light of the fact that Rosebud's testimony is at least some evidence that the incarceration lasted more than twelve months, it may have been harmless.

judicata apply to any "final decision concerning a claimant's entitlement to benefits" – even if that decision was not made by an ALJ or the Appeals Council. *Id.* at 842. The Sixth Circuit explained:

> A decision concerning a claimant's eligibility for social security benefits is an "initial determination" under the social security regulations. 20 C.F.R. § 404.902. An initial determination is binding unless the claimant requests reconsideration or the Commissioner revises its decision. 20 C.F.R. § 404.905. An initial determination is subject to the doctrine of administrative res judicata. *See Draper v. Sullivan,* 899 F.2d 1127, 1130 (11th Cir.1990) (rejecting the Commissioner's argument that res judicata did not apply because the Social Security Administration was not acting in a judicial capacity and the parties not did have an opportunity to litigate the issues).

*Id.* at 841. District courts throughout this circuit have held that the doctrine of administrative res judicata is applicable to a prior initial determination awarding benefits to a claimant. *McGuire v. Colvin*, 2015 WL 105984, *5 (N.D. Ohio Jan. 7, 2015); *Priest v. Comm'r of Soc. Sec.*, 2014 WL 801390, *3 (W.D. Mich. Feb. 28, 2014); *Belew v. Astrue*, 2012 WL 3027114, *3 (E.D. Ky. July 24, 2012); *Miller v. Astrue*, 2012 WL 220234, *1–2 (S.D. Ohio Jan. 25, 2012); *Harris v. Astrue,* 2010 WL 3909495, at *1-2 (S.D. Ohio May 21, 2010), *report & recommendation adopted*, 2010 WL 3909493 (S.D. Ohio Sept. 29, 2010); *Hester v. Comm'r of Soc. Sec*., 2009 WL 2885103, at *4 (E.D. Mich. Sept. 2, 2009); *see also* 20 C.F.R. § 401.901 (defining "determination" to include "the initial determination or the reconsidered determination").

For instance, in *Harris*, the claimant was initially granted SSI benefits at the reconsideration stage under Listing 12.04, but her benefits were subsequently terminated due to excess income. A few months later, she filed a second application for benefits, which the ALJ denied without considering the prior determination that she met Listing 12.04. The court determined that, because *Drummond* extends res judicata effect to initial and reconsidered

determinations, it was error for the ALJ to fail to discuss or apply res judicata to the prior determination. *Id.* at *5-6.

Here, the record is largely undeveloped regarding the nature, dates, and basis for Rosebud's prior benefits award. During the hearing, Rosebud testified that he has "been on Social Security since [he] was eight" – an assertion that the ALJ did not further examine. [Tr. 36-37]. An internal agency itemization chart notes that Rosebud received benefits in 1994, [Tr. 160], and the record contains a three-page IQ evaluation report by Dr. Barbara Sherman from January 1994, [Tr. 244-46], which apparently formed the basis for that award – but nowhere does the record indicate the legal basis for granting benefits.[5] Aside from his decision to decline to give weight to that 1994 IQ test, [Tr. 21], ALJ Paris' decision is silent about the 1994 initial determination. Without any information in the record about the precise basis of the prior award, it is unclear whether it may be accorded *res judicata* effect in the first place. But the ALJ failed to develop the record on this point. Depending on the nature of that prior award, it may be binding on the ALJ's determinations regarding Rosebud's 2011 application – for instance, on his Listing determinations or his RFC finding – in the absence of any "new and material evidence" or improved conditions.[6]

[5] Again, the Commissioner cannot cure this deficiency by filing Rosebud's 1994 initial determination [R. 46-1] with this Court as an attachment to its motion. *Foster*, 279 F.3d at 357.

[6] It is possible that – in light of the fact that Rosebud was apparently incarcerated for over twelve months, thereby resulting in termination of his benefits – ALJ Paris assumed that the application filed on July 5, 2011 was a new application. *See, e.g.*, *Messer v. Astrue*, 2010 WL 4791956 (E.D. Ky. Nov. 18, 2010) (citations omitted) ("Once a claimant's benefits are terminated . . ., he must submit a new application for benefits subject to the five-step sequential evaluation process."). But if this were his unstated reasoning, ALJ Paris' decision to decline to give weight to the 1994 evaluation would constitute a "re-opening" of that earlier benefits award. *See, e.g.*, *Anderson v. Heckler*, 805 F.2d 801, 805 (8th Cir. 1986) (reconsideration of the merits of claimant's medical history in previously adjudicated period can constitute de facto reopening).

Accordingly, the ALJ's failure to develop the record regarding Rosebud's prior benefits award, and his failure to address or apply *Drummond* to the extent it may have been applicable, constituted error. *See McGuire*, 2015 WL 105984 at*5; *Harris*, 2010 WL 3909495 at *5-6. Rosebud's case must therefore be reversed and remanded. On remand, the ALJ is directed to: (1) develop the record regarding the prior award of benefits in 1994; (2) determine whether res judicata applies to that prior award of benefits; (3) determine whether Rosebud's condition has improved or whether new or material evidence warrants a departure from the 1994 determination; and (4) review Rosebud's disability claim under the five-step sequential analysis to determine anew whether Rosebud is under a disability for the applicable and thus eligible for SSI. The ALJ is also advised to develop the record regarding the precise dates of Rosebud's incarceration(s) and to determine whether any incarceration was long enough to constitute a termination of his benefits.

III

Accordingly, for the foregoing reasons, it is **HEREBY ORDERED** that the Commissioner's final decision is **REVERSED** and **REMANDED** pursuant to sentence six of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

This the 31st day of March, 2015.

